Attorney Hector Suero, could you please introduce yourself and begin to begin argument? Good morning, may it please the court. I am Hector Suero-Alvarez on behalf of appellant Jorge Canales. May I reserve two minutes for rebuttal? Yes, you may. Thank you. Mr. Canales suffers from a long list of chronic health conditions that put him at significant risk of COVID complications. He has hypertension, hyperlipidemia, pancreatitis, diabetes, and liver disease. He's also fully vaccinated at this point, hasn't he? He's been, he recently obtained his vaccine and he also had COVID at the beginning of the year. But he still has antibodies as well. Yeah. He's trying to manage this, these health risks inside a BOP institution where he can't take basic safety measures like social distancing. And he is in a BOP institution because of a sentence that a court could not impose today. Those are the two bases for Mr. Canales' motion for compassionate release. And the first one is, of course, the health conditions. The second one being the Almonte-Reyes error. Despite all this, the district court did not grant him compassionate release. And the reason the court didn't grant it is because it evaluated Mr. Canales' motion under the incorrect lens. It limited its discretion to the 1B1.13 policy statement. Why do you say that? There's nothing in Judge Brasosa's opinion that indicates that. Well, there are two issues. First, in the district court, that was the government's briefing. No, it wasn't the government's entire briefing. The government briefed that issue, but Judge Brasosa quite intentionally, I suggest, ignored it when he decided the case. I mean, there's nothing in what Judge Brasosa said that indicates that that was in any way, shape, or form the ground for his decision. Well, Your Honor, the reason that order shows is because the court didn't address the Almonte-Reyes error. The only way the court could have addressed that error is if it didn't find that the policy statement was applicable. Because that Almonte-Reyes sentencing error would not be an appropriate condition for compassionate release under the policy guideline. But the court said that he wasn't entitled to compassionate release, that it didn't find the reasons that he offered extraordinary or compelling. Why isn't the most logical reading of that that the Almonte-Reyes error, which you allege is extraordinary and compelling, was not considered by Judge Brasosa to be extraordinary and compelling? Well, there's nothing in the order addressing that claim, and the one sentence that could be relevant, it's a narrow of law. The way the district court describes it, it's really talking about the District of Virgin Islands sentence, that it was in post-concurrent but then consecutive to the sentence of revocation. So there's no mention on the record of the Almonte-Reyes error. Why don't you move on and tell us why the Almonte-Reyes error should be considered extraordinary and compelling? The Almonte-Reyes error is simply, it means that the sentence of revocation that Mr. Canales is facing today, the court simply could not impose that sentence. So it's a sentence that the court could not impose today and it had consequences because that was the sentence that was before the District of Virgin Islands when the District of Virgin Islands sentenced him. Back up a minute, counsel. All right, that sentence was imposed in 2012, right? There was no challenge to its lawfulness or its legality when it was imposed. There has been no direct challenge to the sentence since. Almonte-Reyes was decided in 2016. There was, it was not, there's nothing in that opinion that indicates it would have retroactive application to a 2012 sentence. And there is nothing about Almonte-Reyes that indicates it would meet the Supreme Court's Teague criteria for retroactivity in sentences. Anything you disagree with in what I've just said? Well, what I would say is that we were in counsel at that time and we can't... I'm not blaming you. I'm just trying to get the facts straight. All right. But it seems to me those are the facts. And we are now, at the time you filed the motion for compassionate release, not only hadn't the Almonte-Reyes error been challenged in the District of Virgin Islands proceeding where it had been imposed, but the time had elapsed for challenging any Almonte-Reyes error on collateral review. Isn't that true? That is correct, Your Honor. So why does a sentence that violates some later imposed non-retroactive rule, which is now not only beyond the appeal period, but beyond any period for collateral review, why should that be considered an extraordinary and compelling reason for release? Because that is part of the reason why the statute for compassionate release exists. The Congress' intention was to provide a narrow avenue for relief and there weren't necessarily any other avenues. So courts have granted compassionate release based on... Yes. They've granted compassionate... Sorry, go ahead. No, go ahead. Yeah. The courts have granted compassionate release in situations and applied statutes that weren't retroactive. For example, the 924C stacking, which wasn't retroactive, but courts have granted compassionate release in those situations. You face a further question that even if that would be available as a ground for extraordinary and compelling release, your burden is to show that the and compelling. Yes. And the reason the court abused its discretion is because it simply didn't address it in its order at all. It was a factor under any conditions that 3553 it might have considered. It's a part of the nature and the circumstances of the defendant of Mr. Canales and it should have been considered. It's an essential part of Mr. Canales' current condition and the court simply didn't address it. And that's an abuse of discretion. It didn't address all the facts or didn't explain why it found that that wasn't an extraordinary and compelling circumstance. You know, we face these issues of the district court didn't say enough. Judge Selye has proposed a reading under which the district court implicitly rejected the argument. You're saying that's not good enough. The district courts are obligated to state reasons that address every argument that a defendant makes, even if they think they're not material. Under those circumstances, don't you think defense counsel ought to go back to the district court and say, you know, we think you didn't address this argument and we ask you to do so. And you did not do that in this case. Yes. Well, if this court was to vacate and remand the case, that's exactly what it would do. But because the court didn't view this under the correct policy statement, that doesn't apply, then it still needs guidance from this court in order to adequately evaluate the motion. So the court now after this, if you vacate and remand, the court will be able to address it then. Yes. But how long has the appeal taken? A year, year and a half, two years. It's been, I believe, less than a year, but that it's and it just shows the importance of addressing these matters. The importance of getting that guideline. Yeah. Well, generally, we're not in the business of addressing things that we do not need to address. Okay. Thank you. Do you have anything further? Okay. That'll be it for now. Thank you. Okay. We'll hear from the government. Please introduce yourself to begin. Judge Lynch, and may it please the court, David Bornstein on behalf of the United States. This court should affirm the district court for two main reasons. First, Mr. Canales had already completely served the sentence he sought to have reduced. And second, the district court did not abuse its discretion in determining that he did not have an extraordinary and compelling reason for release and that the 3553A considerations weighed against releasing him. Tell me about your first argument. All right. Now, the sentence that was imposed for the Puerto Rico probation violation was to be served consecutive to the Virgin Islands sentence that had not yet been imposed. Yes, your honor. Subsequently, sentence was imposed in the DVI case. That sentence was completed relatively recently. And one would think that if the court's directives were followed, the directives of the district court in Puerto Rico, that the 30-month Puerto Rico sentence would have kicked in upon completion of the DVI sentence and would still be the sentence that the defendant was serving. You seem to indicate that you have a different view. Is there anything in the district of Virgin Islands case that the sentence imposed there that indicates that the court there wanted the Puerto Rico sentence served first? Well, your honor, the answer my question, please. Is there anything in the record of the DVI sentencing that indicates that the DVI judge wanted the Puerto Rico sentence served first? We believe that the sentence was being served first. That's not answering my question. The district court in the Virgin Islands did not say whether or not the Puerto Rico sentence was served first. Right. And therefore, the only court that has said anything about it is DPR, which has said that the sentence would be served consecutive to the DVI sentence to be imposed. So your reading of what happened, your honor, simply does not accord with the facts and the reason why. Well, wait a minute. Wait a minute. My reading doesn't accord with the facts? Yes, your honor. Did the DPR judge say consecutive to the sentence to be imposed? Yes, your honor. And did the DVI judge not say anything to the contrary? Yes, your honor. Well, then how does my reading not comport with the facts? If you look at supplemental appendix page 137, you will see that Mr. Canales-Ramos started to the Puerto Rico sentence was imposed on him. So it seems clear that as the first in time sentence, in the three months between his being sentenced in Puerto Rico and his being sentenced in the District of the Virgin Islands, he was incarcerated. Yes, of course he was incarcerated. All right. And of course, he's going to get credit for that time against one of his sentences. There's nothing in the record that shows that he began serving a sentence that the Puerto Rico court had said shouldn't begin to be served yet. He was incarcerated because he'd been incarcerated prior to the date of sentencing. If you look at our briefing, your honor, the understanding of the parties is that when the district court said in Puerto Rico that his sentence would be served consecutively to any future imposed sentence, the parties before this court have agreed that meant that the later in time sentence would be consecutive to the Puerto Rico sentence. And I think our understanding of that has been that the Puerto Rico sentence was served first. The argument your honor is making has not been made by Mr. Canales himself and has not been raised by anyone before this court. Our common understanding, I think, follows from what I cited to your honor, which is supplemental appendix page 137, which indicates that the BOP for purposes of aggregation started to calculate his sentence as being imposed on February 22nd. And I would point out to your honor that he was credited for time before that because he was detained pending his revocation sentence. And so I believe this follows simply from this court's decision in the United States versus Vaughn, where this court said that when you have two consecutive sentences, the first in time sentence begins to run first. But you don't have two consecutive sentences here. You have a sentence that was imposed in DVI, not consecutive. District court there said nothing about it being consecutive. It was imposed, period. Full stop. Yes, your honor. But you then have to consider 18 USC 3584A, which provides that when a later in time sentence is imposed, and if the district court does not say whether it's concurrent or consecutive, by operation of law, it runs consecutively to any previously imposed sentence. So as a result, both sentences, both in Puerto Rico and in the district of the Virgin Islands were imposed on each other. Four minutes remaining. Four minutes. And you made this argument, of course, in the district court. We raised it on appeal before the- Would you answer the question? Did you raise this argument in the district court? No, your honor. We did not raise it in the district court because the parties had assumed that Mr. Canales-Ramos could pursue a sentence reduction before both the district of Puerto Rico and the district of the Virgin Islands under his idea that he was serving an aggregated sentence. However, as this court held in the United States versus George, which we cite, as the athlete, we may seek an affirmance on any ground supported by the record, even if that ground had not been raised before the district court. And we believe that this ground is set forth sufficiently. This is virtually what the court did in Vaughan. In Vaughan, it was on appeal that the U.S. government argued that the district court, which had denied that defendant a sentence reduction without explaining its reasons why, this court held that it was going to affirm the judgment because if you looked at the record, you could see that the defendant only qualified for a sentence reduction on his first sentence, not his second consecutive sentence. And he had already served his first sentence by the time the court had denied his motion for a sentence reduction. The same effects apply here, your honor. Mr. Bornstein, I had understood the government's position to be that the Almonte's-Reyes application question did not need to be reached in this case because regardless, there was no abuse of discretion in the denial of compassionate release. Have I misunderstood? No, your honor. We agree there was no abuse of discretion, but our point also, there are two additional points we make about Almonte-Reyes. The first one is that any error there was harmless because again, when the District of the Virgin Islands imposed its whether the sentence would run concurrently or consecutively. So under 18 U.S.C. 3584A, by operation of law, the District of Virgin Islands sentence was set to run consecutively to the Puerto Rico sentence. Second, Mr. Canales-Ramos before the district court conceded the fact that at the time his Puerto Rico sentence was imposed, it was legitimate. You find that on pages 55 and 56 of the appendix. That is his reply brief to the district court, where he says that at the time the District of Puerto Rico imposed the sentence, no one had any reason to think that it was incorrect. And we agree with certain sentiments that were made in the question by Judge Selya, which is that Almonte-Reyes is simply not applicable to this case because Almonte-Reyes came down four years after the sentence here was imposed, long after it was final. And there is simply no retroactivity there. Mr. Bornstein, your opponent just said, regardless of whether you need to reach certain issues, it would bring clarity to the law and provide greater guidance to the district courts were we to reach the issues. So the question arises actually both as to the status of the sentencing commission comments at this point, but it also arises as to the Almonte-Reyes issue. And so from the government's point of view, which handles a number of these cases, would there be a benefit to this court clarifying either one or both? We believe that there's no opportunity for the court to opine on either issue in this case, simply because 1B113 is irrelevant. It is irrelevant, first of all, because of the judge's uncontested finding that COVID-19 poses no risk to Mr. Canales. He does not challenge that finding as clearly erroneous. And under that finding, it does not matter if the district court had accepted Mr. Canales' own conception of extraordinary and compelling reason because the court had found that COVID-19 did not pose any risk to his health. And second, the court specifically said that even if he had an extraordinary and compelling reason under 1B113, it would still deny him relief under the 3553A factors, highlighting the amount of time, assuming that he could still be deducted all 30 months of this sentence, the amount of pendency of this motion, his time for release was set back by a number of months because of his disorderly conduct in prison. Your Honor, if there are no further questions, we would ask this court to affirm the district court, primarily because there's no sentence left for him to be released on in this particular case. And also because he has been fully vaccinated and thus cannot present an extraordinary and compelling reason anyways. Okay. Seeing no questions from my colleagues, thank you. Thank you, Your Honors. Mr. Fornstein, please mute your audio and your video at this time. Attorney Suero, if you could unmute your audio and video, and you have a two-minute rebuttal. I don't have authorization to unmute my video. I am going to do that for you. There you go. I can do it now. Thank you. You're welcome. Mr. Suero, could I ask you, do you agree that your client has fully served the 30-month probation violation sentence? No, we do not. And we did not agree to that before the district court. I didn't think so. Thank you. That issue with the Puerto Rico sentence, there's nothing in the record to support it. It was not an issue before the district court. The government didn't argue, and the court proceeded as if assuming that it had authority. Then the effect of that Almonte-Reyes sentencing error at this point would be speculation, because we don't know what the effect it would have on the district court. We just know that at that time, the Almonte-Reyes error. Very quickly, I also wanted to address the importance of this court and addressing the policy statement. The policy statement is necessary for the district court to address the Almonte-Reyes error. If this court does not find that the policy statement does not apply, the district court cannot get to that error. And furthermore, it's important because I think courts in four of out of the five districts in this circuit have found that the policy statement is not applicable. And Mr. Canales should not receive a different treatment simply because he was sentenced here in Puerto Rico. Okay, thank you. Thank you. At this time, Attorney Suero and Attorney Bornstein may disconnect from the meeting.